UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**MIJIN KIM**

        Plaintiff,

                             Case No.

vs.

                             HON. _____

**ASIA AUTOMOTIVE AMERICA, INC.,**
a Michigan corporation,
**ASIA CO. LTD.,**
a foreign corporation,
**and**
**SENGJA SIN,**
an individual,
jointly and severally**,**

        Defendants.

---

**MANNARINO LAW PLLC**
By:  ANGELA M. MANNARINO (P72374)
Attorneys for Plaintiff
37637 Five Mile Road #294
Livonia, MI 48154
(734) 430-0880
angela@mannarino-law.com

---

# <u>COMPLAINT AND DEMAND FOR TRIAL BY JURY</u>

      NOW COMES Plaintiff, by her attorneys, MANNARINO LAW PLLC, and

for her Complaint against Defendant states as follows:

1.     This Complaint asserts claims of discrimination, harassment, and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 USC §2000e, *et seq*., as amended. and in violation of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), MCL §37.201, *et seq.,* as amended. It also asserts a claim of assault and battery under Michigan law.

## PARTIES

2.     Plaintiff MIJIN KIM (hereinafter referred to as "Kim") is an individual who resides in the City of Farmington Hills, County of Oakland, State of Michigan.

3.     Defendant ASIA CO. LTD. (hereinafter "Asia Co.") is a South Korean limited company, authorized to and doing business in Michigan, with a place of business in the City of Pontiac, County of Oakland, State of Michigan, and, at all relevant times, conducts regular, continuous, and systematic business activities in the Eastern District of Michigan.

4.     Defendant ASIA AUTOMOTIVE AMERICA, INC. (hereinafter "AAA") is a Michigan corporation, authorized to and doing business in Michigan, with its principal place of business in the City of Pontiac, County of Oakland, State of Michigan, and, at all relevant times, conducts regular, continuous, and systematic business activities in the Eastern District of Michigan.

5.     Defendant SENGJA SIN (hereinafter "SIN") is an individual domiciled, upon information and belief in, the Charter Township of Bloomfield,

County of Oakland, State of Michigan; employed by Defendants Asia Co. and AAA; and conducting regular, continuous, and systematic business activities in the Eastern District of Michigan.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over Defendants because Defendants conducts business on a regular and systematic basis in the Eastern District of Michigan and Defendants Asia Co and AAA have a place of business in the Eastern District of Michigan.

7.      This Court has jurisdiction over Kim's Title VII claim under and pursuant to 28 USC §§1331 and 1343.

8.      This Court has supplemental jurisdiction over Kim's state law claims under and pursuant to 28 USC §1367, and Kim's federal law claim substantially predominates over Kim's state law claims.

9.      On or about May 23, 2023, Kim filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). Exhibit A.

10.     The EEOC issued a Notice of Right to Sue to Kim on or about September 16, 2024. Exhibit B.

11.     At all relevant times, Defendants Asia Co. and AAA have operated a single employer or integrated enterprise by virtue of their common management,

common ownership, interrelation of operations, and centralized control of labor relations. For example:

a.      Kim had an Asia Co. email address and accessed the Asia Co. company portal to perform her job duties. AAA did not have a separate portal.

b.      Sin is President of AAA as well as a Director of Asia Co.

c.      Sin's father is a Director of AAA as well as President of Asia Co. He was previously the President of both AAA and Asia Co.

d.      Asia Co.'s Human Resources ("HR") performed HR services for both Asia Co. and AAA.

e.      Employees perform services for both AAA at its location in Pontiac, MI and Asia Co. at its location in South Korea.

f.      AAA submitted its monthly finance report to Asia Co. for its finance team to audit.

g.      Upon information and belief, Asia Co. provided money to AAA for AAA's real estate business investments.

12.     Kim timely filed this Complaint within 90 days of receiving the EEOC's Notice of Right to Sue.

13.     Venue is proper in this judicial district pursuant to 28 USC §1391 because the events giving rise to the claims occurred in this judicial district.

## COMMON FACTUAL ALLEGATIONS

14.    Kim commenced her employment with AAA on July 25, 2021 as its Operations Manager.

15.    AAA has an office in Pontiac, MI.

16.    During Kim's employment, she performed job duties for both Asia Co. and AAA.

17.    Sin is the President of AAA as well as a Director of Asia Co., and at all relevant times, Sin was Kim's direct supervisor.

18.    As Kim's direct supervisor, Sin was responsible for the terms and conditions of Kim's employment, including, but not limited to, evaluating Kim's work performance, Kim's compensation, and decisions about the termination of Kim's employment.

19.    In the summer of 2022, Sin's wife and children traveled to South Korea.

20.    Upon information and belief, this was the first time during Kim's employment that Sin's family was out of town without him for a period of time.

21.    While Sin's family was out of town, in late July 2022, two male employees from Asia Co. were visiting Michigan from South Korea.

22.    To entertain the employees, Sin planned an outing to a karaoke bar in Troy, MI on July 25, 2022 for Sin, Kim, another employee from the Pontiac office, and the two employees from South Korea.

23.     Kim was the only female employee of Asia Co. and AAA to attend the karaoke outing.

24.     Kim's young daughter was ill with a high fever, but Sin would not allow Kim to miss the karaoke outing.

25.     Sin became intoxicated while at the karaoke bar and encouraged the others to drink alcohol.

26.     At one point during the evening at the karaoke bar, Sin ordered everyone out of the room they were all in except for Kim.

27.     After the other men left the room, Sin turned off the lights in the room.

28.     Sin then proceeded to ask Kim to sit next to him.

29.     Kim was uncomfortable with the request as Sin was quite intoxicated at that point. However, because Sin was her direct supervisor, she felt compelled to oblige.

30.     To keep her distance from Sin, Kim sat down but placed the karaoke song book in between the two of them.

31.     Sin then removed the book to move closer to Kim. He next placed his arm around Kim and pulled her body to his.

32.     Kim was incredibly uncomfortable with this action, but because he was her boss and she was scared (especially because he was drunk) and ashamed that he

was making these unwanted advances, she pushed his hands away but did not push his body away.

33.    Sin is physically much larger than the petite Kim.

34.    Sin then escalated by touching her breast on top of her shirt, attempting to unbutton her pants, and attempting to kiss her.

35.    Kim avoided the kiss by turning her cheek.

36.    She then told Sin to stop and that it was time to leave because he was intoxicated.

37.    Sin had arranged a car service to drive everyone home.

38.    Sin told Kim that he told the driver to take her to his house.

39.    Kim was completely uncomfortable with this request as she wanted to go home to her husband and children and did not want to be subjected to any further unwanted touching from Sin.

40.    Kim requested that the driver to take her to her home instead of Sin's, and the driver obliged.

41.    The following day, Kim reached out to Sin to call off sick for work because she was upset about what had transpired the evening before and was not prepared to face him at work.

42.     Sin refused to allow her to miss work, claiming that it would not look good to the employees visiting from South Korea if she missed work the day after the outing to the karaoke bar.

43.     Fearing for her employment, Kim eventually agreed to go into the office, but on the way to the office, she called Sin to tell him that she was not well enough to go in to the office.

44.     Sin then requested that Kim meet him at his house.

45.     Kim was apprehensive, but, because Sin was her supervisor and had control over her employment, she felt compelled to attend the meeting.

46.     Wanting to avoid going to Sin's house, Kim asked Sin to meet her at Starbucks.

47.     Sin refused Kim's request to meet at Starbucks.

48.     Kim wanted their meeting to occur in a public place because she was concerned that Sin would sexually assault her again.

49.     When Kim was reluctant to meet Sin at his house, Sin asked her if she was uncomfortable meeting at his house. When Kim said yes, he attempted to reassure her that she could meet at his house.

50.     Kim, feeling that she had no other choice, went to Sin's home to meet with him.

51.    She hoped they could meet in front of his house instead of inside the house, but when she arrived, Sin invited her into the home and to have a seat at the dining room table.

52.    Kim intentionally placed a chair in between her and Sin.

53.    Sin began asking Kim questions about the evening at the karaoke bar.

54.    Sin asked Kim if something had happened the night before and if she remembered.

55.    Sin apologized, but his demeanor was casual and he was giggling while asking Kim questions.

56.    Sin then proceeded to ask Kim if he used his physical size against her and if she pushed him away before he admitted that he made a mistake.

57.    Sin then asked Kim to move into the seat next to his.

58.    Kim agreed to do so if he agreed not repeat his behavior from the day before (i.e., groping her at the karaoke bar).

59.    Sin then grabbed Kim around the ribcage to get her to stand up and then hugged her.

60.    While they hugged, Sin pressed his body against Kim, and she could feel that his penis was erect.

61.     Kim wanted to leave, but because Sin's house is large and she was unfamiliar with the layout, Kim was afraid that if she tried to run, she would not know how to get outside and Sin would pursue her.

62.     Kim was scared of Sin and afraid of angering him.

63.     After the hug, he asked her if he made the situation worse by hugging her.

64.     Sin then began discussing Kim's work performance.

65.     When Sin began to compliment Kim's appearance the night before, Kim steered the conversation back to work.

66.     Sin then apologized again for his behavior at the karaoke bar but said that he wanted to kiss Kim.

67.     Kim continued to try to find a way to get out of his house, so she asked Sin if he needed to go to the office for lunch.

68.     Sin, however, had other plans, and he coerced Kim to move to the couch.

69.     Kim again complied with his request because he was her direct supervisor and she was scared.

70.     While sitting on the couch, Sin touched her and kissed her.

71.     Kim was powerless and unable to stop Sin and his physical assault.

72.    Sin then pulled Kim by her arm to get her to stand, carried Kim to his bedroom, undressed her, and raped her.

73.    Kim did not consent to having sex with Sin at any time.

74.    After the sexual act was completed, Sin ordered Kim take a shower and turned on the water.

75.    After showering, Kim then asked Sin for a cigarette.

76.    In Korean culture, some men have a prejudice against women smoking, so Kim thought if she smoked, Sin would be disappointed in her so that she could leave his house without any further sexual assault.

77.    Shortly after Kim and Sin smoked, Sin permitted Kim to leave Sin's house.

78.    The following day, on July 27, 2022, Kim took the day off to visit her family doctor.

79.    The same day, Kim told her husband how Sin had sexually assaulted her.

80.    On July 28, 2022, Kim reported to work, but began crying, shaking, and having trouble breathing at the prospect of having to interact with Sin.

81.    A coworker saw Kim and asked if she wanted to go home.

82.    After she left the office, Sin called and texted her repeatedly.

83.     When Kim left work, she went to the Bloomfield Township police and reported that Sin had sexually assaulted her twice, once on July 25 at the karaoke bar and a second time on July 26 at Sin's residence.

84.     Kim filed a personal protection order ("PPO") against Sin on August 5, 2022.

85.     The PPO was entered the same day and Sin was served with the PPO on August 8, 2022.

86.     Kim was afraid to return to work and see Sin, so she utilized her vacation time to avoid him.

87.     On August 7, 2022, Kim reported Sin's assaults to AAA and Asia Co.

88.     She made the report via email to the Vice President of Asia Co. and five human resources ("HR") employees.

89.     Kim made her complaint to AAA and Asia Co. because she and Sin were employed by both companies, and AAA had no separate HR.

90.     Kim requested the companies take action against Sin because he sexually assaulted her on two occasions.

91.     Within 30 minutes of her report, Kim was locked out of her company email and company portal.

92.     Kim sent an email to an Asia Co. HR employee asking him to allow her to access her email and company portal.

93.    The HR employee replied that because Kim sent the complaint email to people he felt were unnecessary, her access was blocked.

94.    On August 8, 2022, the HR employee said that Kim's email and portal access would be restored and instructed her only to speak to him and the vice president of Asia Co. about her complaint.

95.    Kim also objected in an email to the vice president of Asia Co. about the HR employee's status as an investigator of her complaint because he was at the karaoke bar and was potentially a witness to first sexual assault.

96.    On August 9, 2022, Sin enlisted a subordinate employee at the Pontiac office as his messenger to inform Kim that she could work from home.

97.    Even though Kim's email access was restored, AAA began stripping her of her responsibilities after she complained.

98.    Kim was responsible for the company phones, but on August 26, 2022, she noted that the password for the Verizon account had been changed.

99.    On August 30, 2022, Kim discovered that the passwords for the Chase and Comerica accounts had also been changed.

100.   Kim needed access to the Verizon and bank accounts because she was responsible for the monthly expense report.

101.   On August 11, 2022, the vice president emailed Kim to let her know that he was unable to investigate her complaint so he would follow up with her the following week after the company decided who would investigate her complaint.

102.   On August 15, 2022, Kim provided her statement to AAA and Asia Co. and notified the vice president about the PPO she had obtained against Sin.

103.   Two days later, on August 17, 2022, Asia Co.'s Executive Managing Director notified Kim that he received her statement and would contact her if he needed further information.

104.   On August 28, 2022, Kim reached out to Asia Co.'s Executive Managing Director for an update about the investigation but he never replied.

105.   Upon information and belief, the police completed their investigation by mid-September 2022.

106.   After the police investigation completed, Asia Co. and AAA continued to refuse to investigate Kim's complaint again Sin.

107.   Because Kim's responsibilities and access to company systems were being taken away and Asia Co. and AAA refused to conduct an investigation or take action against Sin and Kim continued to directly report to him, on or about September 27, 2022, Kim had no choice but to resign her employment, indicating that her last day of work would be October 9, 2022.

108.   On October 3, 2022, AAA and Asia Co. revoked Kim's access to the company site, which terminated her employment.

## COUNT I – VIOLATION OF TITLE VII OF THE
## CIVIL RIGHTS ACT OF 1964 –SEX DISCRIMINATION – AGAINST
## DEFENDANTS ASIA CO AND AAA

109.   Kim repeats and incorporates by reference each and every paragraph of this Complaint as though fully set forth herein verbatim.

110.   At all relevant times, Defendants Asia Co and AAA were an "employer" and a "person" as those terms are defined by Title VII.

111.   At all times relevant herein, under Title VII, Kim had a right to employment free from discrimination based on her sex.

112.   Defendants Asia Co and AAA violated Kim's rights under Title VII by, discriminating against Kim because of her sex, including but not limited to:

   a. Terminating Kim's employment because of her sex;

   b. Denying Kim employment opportunities because of her sex;

   c. Treating employees, including Kim, differently than similarly situated male employees;

   d. Discriminating against Kim with respect to compensation or the terms, conditions, or privileges of employment; and

   e. Otherwise discriminating against and disparately treating Kim on the basis of her sex with respect to the terms, conditions and privileges of her employment.

113.   As a direct and proximate result of Defendant Asia Co. and AAA's aforementioned intentional violation of Kim's civil rights, as set forth by Title VII,

Kim has and will continue to suffer damages, including but not limited to: the loss of employment; the loss of income, fringe benefits, and bonuses, both past and future; humiliation, shock, mental, emotional and physical distress; and damage to her personal and professional reputation.

**WHEREFORE**, Plaintiff Mijin Kim requests that this Court enter a Judgment against Defendants Asia Co. and AAA, jointly and severally, for damages and exemplary damages, in whatever amount is shown to be established by the proofs, and injunctive or equitable relief, together with interest, costs, and reasonable attorney fees.

## COUNT II – VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT – SEX DISCRIMINATION – AGAINST ALL DEFENDANTS

114.    Kim repeats and incorporates by reference each and every paragraph of this Complaint as though fully set forth herein verbatim.

115.    At all times relevant herein, Kim was an employee and Asia Co., AAA, and Sin (collectively "Defendants") each were an "employer" within the meaning of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), MCL 37.2101 *et seq*.

116.    At all times relevant herein, under the ELCRA, Kim had a right to employment free from discrimination based on her sex.

117.    Defendants violated Kim's rights under the ELCRA by, discriminating against Plaintiff because of her sex, including but not limited to:

a.      Terminating Kim's employment because of her sex;

b.      Denying Kim employment opportunities because of her sex;

c.      Treating employees, including Kim, differently than similarly situated male employees;

d.      Discriminating against Kim with respect to compensation or the terms, conditions, or privileges of employment; and

e.      Otherwise discriminating against and disparately treating Kim on the basis of her sex with respect to the terms, conditions and privileges of her employment.

118.    As a direct and proximate result of Defendants' aforementioned intentional violations of Kim's civil rights, as set forth by the ELCRA, Plaintiff Mijin Kim has and will continue to suffer damages, including but not limited to: the loss of employment; the loss of income, fringe benefits, and bonuses, both past and future; humiliation, shock, mental, emotional and physical distress; and damage to her personal and professional reputation.

**WHEREFORE**, Plaintiff Mijin Kim requests that this Court enter a Judgment against Defendants, jointly and severally, for damages and exemplary damages, in whatever amount is shown to be established by the proofs, and injunctive or equitable relief, together with interest, costs, and reasonable attorney fees in accordance with MCL §37.2801.

## COUNT III – VIOLATION OF TITLE VII OF THE
## CIVIL RIGHTS ACT OF 1964 – RETALIATION – AGAINST
## <u>DEFENDANTS ASIA CO. AND AAA</u>

119.     Kim repeats and incorporates by reference each and every paragraph of this Complaint as though fully set forth herein verbatim.

120.     At all relevant times, Defendants Asia Co. and AAA were an "employer" and a "person" as those terms are defined by Title VII.

121.     Under Title VII, Defendants Asia Co. and AAA were prohibited from:

     a.     Retaliating or otherwise discriminating against Kim because she made or filed a complaint about sexual harassment and discrimination which violated Title VII; and

     b.     Retaliating or otherwise discriminating against Kim because she expressed her opposition to sexual harassment and discrimination which violated Title VII.

122.     Defendants Asia Co. and AAA violated the aforementioned prohibitions imposed by Title VII by terminating Kim's employment and otherwise retaliating against her because she made or filed a complaint and/or expressed her opposition to illegal sex harassment and/or discrimination by Defendants.

123.     As a direct and proximate result of Defendants Asia Co. and AAA's aforementioned intentional violation of Kim's civil rights, as set forth by Title VII, Kim has and will continue to suffer damages, including but not limited to: the loss

of compensation, both past and future; humiliation, shock, mental, emotional and physical distress; and damage to her personal and professional reputation.

**WHEREFORE**, Plaintiff Mijin Kim requests that this Court enter a Judgment against Defendants Asia Co. and AAA, jointly and severally, for damages and exemplary damages, in whatever amount is shown to be established by the proofs, and injunctive or equitable relief, together with interest, costs, and reasonable attorney fees.

## COUNT IV – VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT – RETALIATION – AGAINST ALL DEFENDANTS

124.   Kim repeats and incorporates by reference each and every paragraph of this Complaint as though fully set forth herein verbatim.

125.   At all times relevant herein, Kim was an employee and Defendants each were an "employer" and "person" within the meaning of the ELCRA.

126.   At all times relevant herein, under the ELCRA, Kim had a right to be free from retaliation and discrimination because she opposed a violation of the ELCRA.

127.   Defendants violated Kim's rights under the ELCRA by, retaliating and discriminating against Kim because of her report of a violation of the ELCRA including but not limited to:

a.   Terminating Kim's employment because she reported a violation of the ELCRA;

b. Denying Kim employment opportunities because she reported a violation of the ELCRA;

c. Treating employees, including Kim, differently than similarly situated employees;

d. Discriminating against Kim with respect to compensation or the terms, conditions, or privileges of employment; and

e. Otherwise discriminating against and disparately treating Kim because she reported a violation of the ELCRA with respect to the terms, conditions and privileges of her employment.

128. As a direct and proximate result of Defendants' aforementioned intentional violations of Kim's civil rights, as set forth by the ELCRA, Kim has and will continue to suffer damages, including but not limited to: the loss of employment; the loss of income, fringe benefits, and bonuses, both past and future; humiliation, shock, mental, emotional and physical distress; and damage to her personal and professional reputation.

**WHEREFORE**, Plaintiff Mijin Kim requests that this Court enter a Judgment against Defendants, jointly and severally, for damages and exemplary damages, in whatever amount is shown to be established by the proofs, and injunctive or equitable relief, together with interest, costs, and reasonable attorney fees in accordance with MCL §37.2801.

## COUNT V – VIOLATION OF TITLE VII OF THE
## CIVIL RIGHTS ACT OF 1964 – SEX HARASSMENT – AGAINST
## <u>DEFENDANTS ASIA CO. AND AAA</u>

129.    Kim repeats and incorporates by reference each and every paragraph of this Complaint as though fully set forth herein verbatim.

130.    At all relevant times, Defendants Asia Co. and AAA were an "employer" and a "person" as those terms are defined by Title VII.

131.    Under Title VII, Defendants Asia Co. and AAA were prohibited from harassing Kim on the basis of her sex.

132.    Defendants Asia Co. and AAA violated Kim's rights under Title VII by harassing Kim because of her sex and/or permitting Sin, a management employee and Kim's direct supervisor, to harass Kim on the basis of her sex.

133.    Sin's sexual harassment of Kim was intentional.

134.    Sin's sexual harassment of Kim created a hostile work environment.

135.    Defendants Asia Co. and AAA failed to adequately investigate Kim's complaint against Defendant Sin.

136.    Defendants Asia Co. and AAA failed to take appropriate remedial action against Sin on the basis of Kim's complaint.

137.    Defendants Asia Co. and AAA used Kim's submission to or rejection of such sexual harassment as a factor in decision(s) affecting Kim's employment

138.   As a direct and proximate result of Defendant Asia Co. and AAA's aforementioned intentional violations of Kim's civil rights, as set forth by Title VII, Kim has and will continue to suffer damages, including but not limited to: the loss of employment; the loss of income, fringe benefits, and bonuses, both past and future; humiliation, shock, mental, emotional and physical distress; and damage to her personal and professional reputation.

**WHEREFORE**, Plaintiff Mijin Kim requests that this Court enter a Judgment against Defendants Asia Co. and AAA, jointly and severally, for damages and exemplary damages, in whatever amount is shown to be established by the proofs, and injunctive or equitable relief, together with interest, costs, and reasonable attorney fees.

## COUNT VI – VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT – SEX HARASSMENT – AGAINST ALL DEFENDANTS

139.   Kim repeats and incorporates by reference each and every paragraph of this Complaint as though fully set forth herein verbatim.

140.   At all times relevant herein, Kim was an employee and Defendants each were an "employer" and "person" within the meaning of the ELCRA.

141.   At all times relevant herein, under the ELCRA, Kim had a right to be free from harassment because of her sex.

142.   Defendants violated Kim's rights under the ELCRA by harassing Kim because of her sex and/or permitting Sin, a management employee and Kim's direct supervisor, to harass Kim on the basis of her sex.

143.   Sin's sexual harassment of Kim was intentional.

144.   Sin's sexual harassment of Kim created a hostile work environment.

145.   Defendants failed to adequately investigate Kim's complaint against Defendant Sin.

146.   Defendants failed to take appropriate remedial action against Sin on the basis of Kim's complaint.

147.   As a direct and proximate result of Defendants' aforementioned intentional violation of Plaintiff Mijin Kim's civil rights, as set forth by the ELCRA, Kim has and will continue to suffer damages, including but not limited to: the loss of employment; the loss of income, fringe benefits, and bonuses, both past and future; humiliation, shock, mental, emotional and physical distress; and damage to her personal and professional reputation.

**WHEREFORE**, Plaintiff Mijin Kim requests that this Court enter a Judgment against Defendants, jointly and severally, for damages and exemplary damages, in whatever amount is shown to be established by the proofs, and injunctive or equitable relief, together with interest, costs, and reasonable attorney fees in accordance with MCL §37.2801.

## COUNT VII – ASSAULT AND BATTERY – <br> AGAINST DEFENDANT SIN ONLY

148.    Kim repeats and incorporates by reference each and every paragraph of this Complaint as though fully set forth herein verbatim.

149.    Sin committed acts which caused Kim to be apprehensive that Sin would subject her to an imminent battery and/or intentional invasion of her rights to be free from offensive and harmful contact.

150.    Sin engaged in conduct that demonstrated that Sin had a present ability to subject Kim to an immediate, intentional, offensive, and harmful touching.

151.    Sin did in fact engage in a touching of Kim that was an immediate, intentional, offensive, and harmful touching.

152.    Kim did not consent to such conduct, which caused injury, damage, loss, and/or harm to her.

153.    The acts described herein constitute assault and battery, actionable under the laws of the State of Michigan.

154.    Sin committed acts which resulted in harmful or offensive contact with Kim's body.

155.    As a direct and proximate result of Sin's aforementioned intentional assault and/or battery against Kim, Kim has and will continue to suffer damages, including but not limited to: the loss of employment; the loss of income, fringe

benefits, and bonuses, both past and future; humiliation, shock, mental, emotional and physical distress; and damage to her personal and professional reputation.

    **WHEREFORE**, Plaintiff Mijin Kim requests that this Court enter a Judgment against Defendant Sengja Sin for damages and exemplary damages, in whatever amount is shown to be established by the proofs, and injunctive or equitable relief, together with interest, costs, and reasonable attorney fees.

                        Respectfully submitted,

                        **MANNARINO LAW PLLC**

                        _____
                        **ANGELA MANNARINO (P72374)**
                        Attorneys for Plaintiff
                        37637 Five Mile Road
                        Suite 294
                        Livonia, MI  48154
                        (734) 430-0880

DATE:        December 9, 2024

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


**MIJIN KIM**

        Plaintiff,

                                                Case No.

vs.

                                                HON. _____

**ASIA AUTOMOTIVE AMERICA, INC.,**
a Michigan corporation,
**ASIA CO. LTD.,**
a foreign corporation,
**and**
**SENGJA SIN,**
an individual,
jointly and severally**,**

        Defendants.

---

## **<u>DEMAND FOR JURY TRIAL</u>**

       Plaintiff, by and through her attorneys, MANNARINO LAW PLLC, demands

a trial by jury in this cause of action.

Respectfully submitted,

**MANNARINO LAW PLLC**

_____

**ANGELA MANNARINO (P72374)**
Attorneys for Plaintiff
37637 Five Mile Road
Suite 294
Livonia, MI  48154
(734) 430-0880

DATE:        December 9, 2024

# EXHIBIT A

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See Privacy Act Statement and other information before completing this form. | [ ] FEPA<br>[X] EEOC | 471-2023-04051 |

| Michigan Department of Civil Rights and EEOC |
|---|

| NAME (Indicate Mr., Ms., Mrs.)<br>Ms. Mijin Kim | HOME TELEPHONE (Include Area Code) |
|---|---|

| STREET ADDRESS | CITY, STATE AND ZIP CODE<br>Farmington Hills, MI 48335 | DATE OF BIRTH |
|---|---|---|

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below).

| NAME<br>Asia Co. Ltd. | NUMBER OF EMPLOYEES, MEMBERS<br>101-200 | TELEPHONE (Include Area Code):<br>+82 031-350-4205 |
|---|---|---|

| STREET ADDRESS<br>504 Balan-Ro, Hyangnam-Eup,<br>Hwasung-Si, Kyungki-Do, Korea 18624 | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|

| NAME | NUMBER OF EMPLOYEES, MEMBERS: | TELEPHONE (Include Area Code) |
|---|---|---|

| STREET ADDRESS<br>152 West Speed Way | CITY, STATE AND ZIP CODE<br>Pontiac, MI 48341 | COUNTY<br>Oakland |
|---|---|---|

| CAUSE OF DISCRIMINATION BASED ON (Check appropriate box (es).) | DATE DISCRIMINATION TOOK PLACE |
|---|---|
| [ ] RACE  [ ] COLOR  [X] SEX  [ ] RELIGION  [ ] NATIONAL ORIGIN<br><br>[X] RETALIATION  [ ] AGE  [ ] DISABILITY  [ ] OTHER (Specify below.) | EARLIEST  LATEST<br>07/25/2022  10/2022<br><br>[ ] CONTINUING ACTION |

THE PARTICULARS ARE (If additional space is needed, attach extra sheet(s))

I began employment with the above-listed employer and Asia Automotive America, Inc. on July 25, 2021. Asia Co. Ltd. is the parent company of Asia Automotive America, Inc.

On July 25, 2022, while at a company event in Troy, MI, I was sexually assaulted by direct supervisor, Sengja Sin, who is employed by both Asia Co. Ltd. and Asia Automotive America, Inc. On July 26, 2022, Sin directed me to meet him at his residence in Bloomfield Township, MI under the guise of discussing work. While at his residence, Sin sexually assaulted me again.

On July 28, 2022, I reported both assaults to the police. On August 7, 2022, I reported to Asia Co. Ltd. that Sin had sexually assaulted me. Within 30 minutes of my report, I was locked out of my company email and company portal. When I contacted the company about being locked out, I was informed it was because I made my report to too many people at the company. The company thereafter refused to investigate or take action on my report. Sin remained my direct supervisor. I emailed the company on August 28, 2022 for an update on the status of my complaint. I never received a response. After I made my complaint, my access to the company phone account and company bank accounts was removed.

On September 27, 2022, because of the failure to investigate my complaint and failure to remove Sin as my direct supervisor, I had no choice but to resign my employment (constructive termination) effective October 7, 2022. On October 3, 2022, my access to my work email and company portal were again terminated.

I believe that I was discriminated against and retaliated against because of my sex and because I made a complaint in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
|---|---|
| | 05/23/2023 |
| | SIGNATURE OF COMPLAINANT   DATE |
| I declare under penalty of perjury that the foregoing is true and correct.<br><br>05/23/2023<br>Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS 23 DAY OF May , 2023.<br><br>Notary Public |

| EEOC Form 5 | RANDI HANLON, NOTARY PUBLIC<br>Wayne (acting in Oakland) County, Michigan<br>My Commission Expires 11/09/2029 |
|---|---|

# EXHIBIT B

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Detroit Field Office**
477 Michigan Avenue, Room 865
Detroit, MI 48226
(313) 774-0020
Website: www.eeoc.gov

## <u>DISMISSAL AND NOTICE OF RIGHTS</u>
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 09/16/2024

**To:** Mijin Kim
⬛⬛⬛⬛⬛
Farmington Hills, MI 48335
Charge No: 471-2023-04051

EEOC Representative and email:     JOANNA RIVERA
                                  Federal Investigator
                                  joanna.rivera@eeoc.gov

---

### DISMISSAL OF CHARGE

The EEOC has granted your request for a Notice of Right to Sue, and more than 180 days have passed since the filing of this charge.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 471-2023-04051.

On behalf of the Commission,

Digitally Signed By:Ramiro Gutierrez
09/16/2024

---
Ramiro Gutierrez
Director

**Cc:**
Michelle Shokri
Bodman PLC
201 W BIG BEAVER RD STE 500
Troy, MI 48084

John T Below
Bodman PLC
201 W BIG BEAVER RD STE 500
Troy, MI 48084

SENG JA SIN
ASIA Automotive America Inc.
152 W SPEED WAY
Pontiac, MI 48341

Amanda Empey
Bodman PLC
1901 SAINT ANTOINE ST # 6
Detroit, MI 48226

Rebecca C Seguin-Skrabucha
Bodman PLC
201 W BIG BEAVER RD STE 500
Troy, MI 48084

Angela Mannarino
30500 Northwestern Suite 425
Farmington Hills, MI 48334


Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

# INFORMATION RELATED TO FILING SUIT
# UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

## IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice.** Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice.** Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

## ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

## HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method).  You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 471-2023-04051 to the

Enclosure with EEOC Notice of Closure and Rights (01/22)

District Director at Michelle Eisele, 115 W. Washington St. South Tower Suite 600, Indianapolis, IN 46204.

**To make a Section 83 request for your charge file,** submit a signed written request stating it is a "Section 83 Request" for Charge Number 471-2023-04051 to the District Director at Michelle Eisele, 115 W. Washington St. South Tower Suite 600, Indianapolis, IN 46204.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.