UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MIJIN KIM,

      Plaintiff,

v.

ASIA AUTOMOTIVE AMERICA, INC.,
ASIA CO. LTD, and SENGJA SIN,

      Defendants.

Case No. 24- cv-13272

Hon. Jonathan J.C. Grey

Magistrate Judge Anthony P. Patti

_____/

**DEFENDANT SENG JA SIN'S ANSWER TO COMPLAINT
AND AFFIRMATIVE DEFENSES**

Defendant Seng Ja Sin, by his undersigned attorneys, for his answer and affirmative defenses states as follows:

1.    This Complaint asserts claims of discrimination, harassment, and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 USC §2000e, *et seq*., as amended. and in violation of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), MCL §37.201, *et seq.,* as amended. It also asserts a claim of assault and battery under Michigan law.

**Answer:**  Sin acknowledges that Plaintiff asserts certain claims in the Complaint, but denies as untrue any allegation or inference that the law has been violated or that certain of the laws apply to Sin.

## PARTIES

2.     Plaintiff MIJIN KIM (hereinafter referred to as "Kim") is an individual who resides in the City of Farmington Hills, County of Oakland, State of Michigan.

**Answer:** Admitted.

3.     Defendant ASIA CO. LTD. (hereinafter "Asia Co.") is a South Korean limited company, authorized to and doing business in Michigan, with a place of business in the City of Pontiac, County of Oakland, State of Michigan, and, at all relevant times, conducts regular, continuous, and systematic business activities in the Eastern District of Michigan.

**Answer:** Denied.

4.     Defendant ASIA AUTOMOTIVE AMERICA, INC. (hereinafter "AAA") is a Michigan corporation, authorized to and doing business in Michigan, with its principal place of business in the City of Pontiac, County of Oakland, State of Michigan, and, at all relevant times, conducts regular, continuous, and systematic business activities in the Eastern District of Michigan.

**Answer:** Admitted.

5.     Defendant SENGJA SIN (hereinafter "SIN") is an individual domiciled, upon information and belief in, the Charter Township of Bloomfield, County of Oakland, State of Michigan; employed by Defendants Asia Co. and AAA;

and conducting regular, continuous, and systematic business activities in the Eastern District of Michigan.

**Answer:** Admitted.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over Defendants because Defendants conducts business on a regular and systematic basis in the Eastern District of Michigan and Defendants Asia Co and AAA have a place of business in the Eastern District of Michigan.

**Answer:** Admitted with respect to Defendant Sin and AAA. Denied as to Asia Co.

7.     This Court has jurisdiction over Kim's Title VII claim under and pursuant to 28 USC §§1331 and 1343.

**Answer:** This jurisdictional statement is inapplicable to Sin.

8.     This Court has supplemental jurisdiction over Kim's state law claims under and pursuant to 28 USC §1367, and Kim's federal law claim substantially predominates over Kim's state law claims.

**Answer:** Sin denies this allegation to the extent it suggests that Plaintiff has a federal law claim against him and hence that it predominates over her state law claims. Sin acknowledges that the Court may choose to take supplemental jurisdiction over the state law claims.

3

9.      On or about May 23, 2023, Kim filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). Exhibit A.

**Answer:** Defendant is without sufficient information to form a belief as to the truth of the allegation in Paragraph 9 and on that basis denies.

10.     The EEOC issued a Notice of Right to Sue to Kim on or about September 16, 2024. Exhibit B.

**Answer:** Defendant is without sufficient information to form a belief as to the truth of the allegation in Paragraph 10 and on that basis denies.

11.     At all relevant times, Defendants Asia Co. and AAA have operated a single employer or integrated enterprise by virtue of their common management, common ownership, interrelation of operations, and centralized control of labor relations. For example:

**Answer:** Denied.

        a.      Kim had an Asia Co. email address and accessed the Asia Co. company portal to perform her job duties. AAA did not have a separate portal.

**Answer:** Admitted only that Plaintiff's AAA email address contain the suffix "asiago.co.kr." The remaining allegations are denied.

        b.      Sin is President of AAA as well as a Director of Asia Co.

**Answer:**  Sin admits that he is President of AAA. Sin denies any allegation or inference that he is a director of Asia Co. in the sense of being on the U.S.

equivalent of a board of directors. Sin admits he has a job title at Asia Co. that utilizes the term director, but denies any ownership interest.

      c.      Sin's father is a Director of AAA as well as President of Asia Co. He was previously the President of both AAA and Asia Co.

**Answer:** Admitted. Sin further avers that his father, while listed as President for a time on the Michigan Licensing and Regulatory Affairs website, he had no responsibilities at AAA and received no compensation from AAA.

      d.      Asia Co.'s Human Resources ("HR") performed HR services for both Asia Co. and AAA.

**Answer:** Denied.

      e.      Employees perform services for both AAA at its location in Pontiac, MI and Asia Co. at its location in South Korea.

**Answer:** Denied.

      f.      AAA submitted its monthly finance report to Asia Co. for its finance team to audit.

**Answer:** Denied.

      g.      Upon information and belief, Asia Co. provided money to AAA for AAA's real estate business investments.

**Answer:** Sin is without sufficient information on which to form a belief as to the truth of the allegations in paragraph 11.g because the allegation is vague and ambiguous. Sin admits that Asia Co. is the owner of AAA.

12.   Kim timely filed this Complaint within 90 days of receiving the EEOC's Notice of Right to Sue.

**Answer:** Sin is without sufficient information to form a belief as to the truth of the allegation in Paragraph 10 and on that basis denies.

13.   Venue is proper in this judicial district pursuant to 28 USC §1391 because the events giving rise to the claims occurred in this judicial district.

**Answer:** Sin acknowledges Plaintiff's statement of venue as it relates to Sin and AAA, but denies any allegation or inference that the law has been violated. Sin denies the allegation as to Asia Co.

## COMMON FACTUAL ALLEGATIONS

14.   Kim commenced her employment with AAA on July 25, 2021 as its Operations Manager.

**Answer:** Admitted that Plaintiff commended employment with AAA on July 25 2021 as the "Operations Manager/Secretary." All allegations or inferences inconsistent with foregoing are denied.

15.   AAA has an office in Pontiac, MI.

**Answer:** Admitted.

16.     During Kim's employment, she performed job duties for both Asia Co. and AAA.

**Answer**: Denied.

17.     Sin is the President of AAA as well as a Director of Asia Co., and at all relevant times, Sin was Kim's direct supervisor.

**Answer**: Sin admits that he is President of AAA. Sin denies any allegation or inference that he is a director of Asia Co. in the sense of being on the U.S. equivalent of a board of directors. Sin admits he has a job title at Asia Co that utilizes the term director but denies any ownership interest. Sin admits he was Plaintiff's direct supervisor.

18.     As Kim's direct supervisor, Sin was responsible for the terms and conditions of Kim's employment, including, but not limited to, evaluating Kim's work performance, Kim's compensation, and decisions about the termination of Kim's employment.

**Answer**: Admitted.

19.     In the summer of 2022, Sin's wife and children traveled to South Korea.

**Answer**: Admitted.

20.     Upon information and belief, this was the first time during Kim's employment that Sin's family was out of town without him for a period of time.

**Answer**: Denied.

21.    While Sin's family was out of town, in late July 2022, two male employees from Asia Co. were visiting Michigan from South Korea.

**Answer:** Admitted.

22.    To entertain the employees, Sin planned an outing to a karaoke bar in Troy, MI on July 25, 2022 for Sin, Kim, another employee from the Pontiac office, and the two employees from South Korea.

**Answer:** Sin admits only that he planned a celebration for Plaintiff's one year anniversary at a restaurant in Troy, Michigan on July 25, 2022, with the two visiting South Korean employees and Plaintiff. Sin denies as untrue that he made a "plan" to go to the karaoke bar.

23.    Kim was the only female employee of Asia Co. and AAA to attend the karaoke outing.

**Answer:** Admitted only that Plaintiff was the only female employee to attend the outing to a restaurant in Troy, Michigan on July 25, 2022 to celebrate her one year anniversary. All remaining allegations and inferences are denied.

24.    Kim's young daughter was ill with a high fever, but Sin would not allow Kim to miss the karaoke outing.

**Answer:** Sin is without sufficient information on which to form a belief that Plaintiff's daughter was ill with a high fever, and on that basis denies. Sin denies the remaining allegation in Paragraph 24.

25.    Sin became intoxicated while at the karaoke bar and encouraged the others to drink alcohol.

**Answer:** The term "intoxicate" is vague and lacks definition and on that basis Sin denies. Sin denies the remaining allegations.

26.    At one point during the evening at the karaoke bar, Sin ordered everyone out of the room they were all in except for Kim.

**Answer:** Denied.

27.    After the other men left the room, Sin turned off the lights in the room.

**Answer:** Denied.

28.    Sin then proceeded to ask Kim to sit next to him.

**Answer:** Denied.

29.    Kim was uncomfortable with the request as Sin was quite intoxicated at that point. However, because Sin was her direct supervisor, she felt compelled to oblige.

**Answer:** Denied inasmuch as Sin did not ask Plaintiff to sit next to him. The term "intoxicated" is vague and on that basis the allegation is denied. Sin further denies that Plaintiff should not have felt "compelled" to do anything.

30.    To keep her distance from Sin, Kim sat down but placed the karaoke song book in between the two of them.

**Answer:** Denied.

31.     Sin then removed the book to move closer to Kim. He next placed his arm around Kim and pulled her body to his.

**Answer:** Denied.

32.     Kim was incredibly uncomfortable with this action, but because he was her boss and she was scared (especially because he was drunk) and ashamed that he was making these unwanted advances, she pushed his hands away but did not push his body away.

**Answer:** Denied.

33.     Sin is physically much larger than the petite Kim.

**Answer:** Admitted.

34.     Sin then escalated by touching her breast on top of her shirt, attempting to unbutton her pants, and attempting to kiss her.

**Answer:** Denied.

35.     Kim avoided the kiss by turning her cheek.

**Answer:** Denied.

36.     She then told Sin to stop and that it was time to leave because he was intoxicated.

**Answer:** Denied.

37.     Sin had arranged a car service to drive everyone home.

**Answer:** Admitted.

38.     Sin told Kim that he told the driver to take her to his house.

**Answer**: Denied.

39.     Kim was completely uncomfortable with this request as she wanted to go home to her husband and children and did not want to be subjected to any further unwanted touching from Sin.

**Answer**: Sin denies the premise of the allegation that a request that Plaintiff come to his house had been made and denies the remaining allegations.

40.     Kim requested that the driver to take her to her home instead of Sin's, and the driver obliged.

**Answer**: Sin denies the premise of the allegation that the driver had been asked by him to take Plaintiff to his home.

41.     The following day, Kim reached out to Sin to call off sick for work because she was upset about what had transpired the evening before and was not prepared to face him at work.

**Answer**: Denied.

42.     Sin refused to allow her to miss work, claiming that it would not look good to the employees visiting from South Korea if she missed work the day after the outing to the karaoke bar.

**Answer**: Denied.

43.     Fearing for her employment, Kim eventually agreed to go into the office, but on the way to the office, she called Sin to tell him that she was not well enough to go in to the office.

**Answer:** Admitted only that Plaintiff reported to Sin that she did not feel well enough to go to the office due to a hangover. All remaining allegations and inferences are denied as untrue.

44.     Sin then requested that Kim meet him at his house.

**Answer:**  Sin admits only that he and Plaintiff discussed getting together and that Sin suggested Starbucks or his house, and they mutually decided Sin's house. Sin denies any allegation or inference inconsistent with the foregoing.

45.     Kim was apprehensive, but, because Sin was her supervisor and had control over her employment, she felt compelled to attend the meeting.

**Answer:** Denied.

46.     Wanting to avoid going to Sin's house, Kim asked Sin to meet her at Starbucks.

**Answer:** Denied.

47.     Sin refused Kim's request to meet at Starbucks.

**Answer:** Denied.

48.     Kim wanted their meeting to occur in a public place because she was concerned that Sin would sexually assault her again.

**Answer:** Denied.

49.     When Kim was reluctant to meet Sin at his house, Sin asked her if she was uncomfortable meeting at his house. When Kim said yes, he attempted to reassure her that she could meet at his house.

**Answer:** Denied.

50.     Kim, feeling that she had no other choice, went to Sin's home to meet with him.

**Answer:** Denied.

51.     She hoped they could meet in front of his house instead of inside the house, but when she arrived, Sin invited her into the home and to have a seat at the dining room table.

**Answer:** Denied. Sin further avers that he was not present when Plaintiff arrived and that she let herself into the house through the garage. Sin admits that he invited Plaintiff to sit at the dining room table.

52.     Kim intentionally placed a chair in between her and Sin.

**Answer:** Denied.

53.     Sin began asking Kim questions about the evening at the karaoke bar.

**Answer:** Admitted only that Sin and Plaintiff discussed the prior evening. All remaining allegations and inferences are denied.

54.     Sin asked Kim if something had happened the night before and if she remembered.

**Answer:** Admitted only that Sin and Plaintiff discussed the prior evening. All remaining allegations and inferences are denied.

55.     Sin apologized, but his demeanor was casual and he was giggling while asking Kim questions.

**Answer:** Denied that Sin apologized for any wrongdoing. Admitted only that Sin and Plaintiff's conversation was casual and included "giggles." Any allegation or inference inconsistent with the foregoing is denied.

56.     Sin then proceeded to ask Kim if he used his physical size against her and if she pushed him away before he admitted that he made a mistake.

**Answer:** Denied.

57.     Sin then asked Kim to move into the seat next to his.

**Answer:** Denied. Sin further avers that they were already sitting next to each other.

58.     Kim agreed to do so if he agreed not repeat his behavior from the day before (i.e., groping her at the karaoke bar).

**Answer:** Denied.

59.     Sin then grabbed Kim around the ribcage to get her to stand up and then hugged her.

**Answer:** Denied.

60.　　While they hugged, Sin pressed his body against Kim, and she could feel that his penis was erect.

**Answer:** Denied.

61.　　Kim wanted to leave, but because Sin's house is large and she was unfamiliar with the layout, Kim was afraid that if she tried to run, she would not know how to get outside and Sin would pursue her.

**Answer:** Denied.

62.　　Kim was scared of Sin and afraid of angering him.

**Answer:** Denied.

63.　　After the hug, he asked her if he made the situation worse by hugging her.

**Answer:** Denied.

64.　　Sin then began discussing Kim's work performance.

**Answer:** Denied.

65.　　When Sin began to compliment Kim's appearance the night before, Kim steered the conversation back to work.

**Answer:** Denied.

66.　　Sin then apologized again for his behavior at the karaoke bar but said that he wanted to kiss Kim.

15

**Answer:** Denied.

67.    Kim continued to try to find a way to get out of his house, so she asked Sin if he needed to go to the office for lunch.

**Answer:** Denied.

68.    Sin, however, had other plans, and he coerced Kim to move to the couch.

**Answer:** Denied.

69.    Kim again complied with his request because he was her direct supervisor and she was scared.

**Answer:** Denied.

70.    While sitting on the couch, Sin touched her and kissed her.

**Answer:** Sin admits that both he and Plaintiff kissed each other and touched each other willingly. Sin denies any allegation or inference that it was a one-sided encounter.


71.    Kim was powerless and unable to stop Sin and his physical assault.

**Answer:** Denied.

72.    Sin then pulled Kim by her arm to get her to stand, carried Kim to his bedroom, undressed her, and raped her.

**Answer:** Denied.

16

73.     Kim did not consent to having sex with Sin at any time.

**Answer**: Denied.

74.     After the sexual act was completed, Sin ordered Kim take a shower and turned on the water.

**Answer**: Denied.

75.     After showering, Kim then asked Sin for a cigarette.

**Answer**: Admitted.

76.     In Korean culture, some men have a prejudice against women smoking, so Kim thought if she smoked, Sin would be disappointed in her so that she could leave his house without any further sexual assault.

**Answer**: Denied.

77.     Shortly after Kim and Sin smoked, Sin permitted Kim to leave Sin's house.

**Answer**: Denied. Sin further avers that there was never a time that Plaintiff was not "permitted" to leave his home.

78.     The following day, on July 27, 2022, Kim took the day off to visit her family doctor.

**Answer**: Sin admits that Plaintiff did not work in the office on July 27, 2022. Sin is without sufficient information on which to form a belief as to the truth of the allegation that Plaintiff visited her family doctor that day, and on that basis denies.

79.     The same day, Kim told her husband how Sin had sexually assaulted her.

**Answer:** Sin is without sufficient information on which to form a belief as to the truth of the allegation in Paragraph 79, and on that basis denies. Sin expressly denies that he sexually assaulted Plaintiff.

80.     On July 28, 2022, Kim reported to work, but began crying, shaking, and having trouble breathing at the prospect of having to interact with Sin.

**Answer:** Denied.

81.     A coworker saw Kim and asked if she wanted to go home.

**Answer:** Admitted.

82.     After she left the office, Sin called and texted her repeatedly.

**Answer:** Admitted only that Sin and Plaintiff exchanged texts and talked with each other on the phone. Any allegation or inference inconsistent with the foregoing is denied.

83.     When Kim left work, she went to the Bloomfield Township police and reported that Sin had sexually assaulted her twice, once on July 25 at the karaoke bar and a second time on July 26 at Sin's residence.

**Answer:** Admitted only that Plaintiff filed a police report with the Bloomfield Township Police Department on July 28, 2022. Sin further answers by stating that the complaint was false. Sin denies that he sexually assaulted her.

84.     Kim filed a personal protection order ("PPO") against Sin on August 5, 2022.

**Answer:** Admitted.

85.     The PPO was entered the same day and Sin was served with the PPO on August 8, 2022.

**Answer:** Admitted that the PPO was served on Sin at around 5:00 p.m. on August 8, 2022.

86.     Kim was afraid to return to work and see Sin, so she utilized her vacation time to avoid him.

**Answer:** Sin denies that Plaintiff had any reason to be "afraid to return to work." Sin admits Plaintiff utilized some of her vacation time in August 2022.

87.     On August 7, 2022, Kim reported Sin's assaults to AAA and Asia Co.

**Answer:** Admitted only that Plaintiff sent an email communication to several Asia Co. employees, including janitorial and cafeteria workers, and one AAA employee on August 7, 2022, in which she falsely alleged that Sin assaulted her. Sin denies any remaining allegations or inferences.

88.    She made the report via email to the Vice President of Asia Co. and five human resources ("HR") employees.

**Answer**: Denied.

89.    Kim made her complaint to AAA and Asia Co. because she and Sin were employed by both companies, and AAA had no separate HR.

**Answer**: Denied.

90.    Kim requested the companies take action against Sin because he sexually assaulted her on two occasions.

**Answer**: Admitted that Plaintiff requested AAA and Asia Co. to take action against Sin, but denied that Sin sexually assaulted Plaintiff.

91.    Within 30 minutes of her report, Kim was locked out of her company email and company portal.

**Answer**: Admitted only that Plaintiff was temporarily locked out of her email on August 8, 2022. Sin denies all remaining allegations and inferences.

92.    Kim sent an email to an Asia Co. HR employee asking him to allow her to access her email and company portal.

**Answer**: Admitted only that Plaintiff sent an instant message to Wonsoon Kim, an employee of Asia Co. who performed certain human resources responsibilities, requesting access to her email. All remaining allegations and inferences are denied as untrue.

20

93.     The HR employee replied that because Kim sent the complaint email to people he felt were unnecessary, her access was blocked.

**Answer:** Admitted only that Wonsoon Kim explained to Plaintiff that her email was temporarily blocked because her August 7 email, in which she falsely alleged that Sin assaulted her, was sent to unrelated Asia Co. employees. Sin denies all remaining allegations and inferences.

94.     On August 8, 2022, the HR employee said that Kim's email and portal access would be restored and instructed her only to speak to him and the vice president of Asia Co. about her complaint.

**Answer:** Admitted only that, on August 8, 2022, Plaintiff's access to her email was restored, and that Wonsoon Kim instructed Plaintiff to direct questions regarding her false complaint to him and Hwan-Chan Heo ("Heo"). All remaining allegations and inferences are denied as untrue.

95.     Kim also objected in an email to the vice president of Asia Co. about the HR employee's status as an investigator of her complaint because he was at the karaoke bar and was potentially a witness to first sexual assault.

**Answer:** Admitted on that Plaintiff sent an email to Hwan-Chan Heo on or around August 9 2022, requesting that Heo take action with regard to her complaint because Wonsoon Kim may have been a witness to the alleged assault on July 25,

2022. Sin denies any remaining allegations or inferences inconsistent with the foregoing.

96.    On August 9, 2022, Sin enlisted a subordinate employee at the Pontiac office as his messenger to inform Kim that she could work from home.

**Answer:** Denied.

97.    Even though Kim's email access was restored, AAA began stripping her of her responsibilities after she complained.

**Answer:** Denied.

98.    Kim was responsible for the company phones, but on August 26, 2022, she noted that the password for the Verizon account had been changed.

**Answer:** Denied.

99.    On August 30, 2022, Kim discovered that the passwords for the Chase and Comerica accounts had also been changed.

**Answer:** Sin is presently without sufficient information on which to form a belief as to the truth of the allegation, and on that basis denies.

100.    Kim needed access to the Verizon and bank accounts because she was responsible for the monthly expense report.

**Answer:** Denied.

101.   On August 11, 2022, the vice president emailed Kim to let her know that he was unable to investigate her complaint so he would follow up with her the following week after the company decided who would investigate her complaint.

**Answer:** Denied.

102.   On August 15, 2022, Kim provided her statement to AAA and Asia Co. and notified the vice president about the PPO she had obtained against Sin.

**Answer:** Admitted only that, on August 16, 2022, Korea Time, Plaintiff sent an email to Heo, attaching an "incident report" and informing Heo of the PPO she had obtained against Sin. Denied that HEO is the "vice president." Any allegations or inferences inconsistent with the foregoing are denied.

103.   Two days later, on August 17, 2022, Asia Co.'s Executive Managing Director notified Kim that he received her statement and would contact her if he needed further information.

**Answer:** Admitted.

104.   On August 28, 2022, Kim reached out to Asia Co.'s Executive Managing Director for an update about the investigation but he never replied.

**Answer:** Admitted that, on August 29, 2022 Korea Time, Plaintiff sent an email to Heo and requested an update about the investigation. Sin is without sufficient information on which to form a belief as to whether Heo responded to Plaintiff's August 29 email, and on that basis denies.

23

105.   Upon information and belief, the police completed their investigation by mid-September 2022.

**Answer:** Admits only that according to Bloomfield Township Police records, the investigation was concluded on September 7, 2022, and the matter was closed on September 13, 2022.

106.   After the police investigation completed, Asia Co. and AAA continued to refuse to investigate Kim's complaint again Sin.

**Answer:** Sin is presently without sufficient information on which to form a belief as to the truth of the allegations, and on that basis denies.

107.   Because Kim's responsibilities and access to company systems were being taken away and Asia Co. and AAA refused to conduct an investigation or take action against Sin and Kim continued to directly report to him, on or about September 27, 2022, Kim had no choice but to resign her employment, indicating that her last day of work would be October 9, 2022.

**Answer:** Denied.

108.   On October 3, 2022, AAA and Asia Co. revoked Kim's access to the company site, which terminated her employment.

**Answer:** Admitted. Sin further avers that Plaintiff's access to its internal systems was revoked because Plaintiff had voluntarily resigned her employment. Sin denies that this was a termination of Plaintiff's employment.

## COUNT I – VIOLATION OF TITLE VII OF THE
## CIVIL RIGHTS ACT OF 1964 –SEX DISCRIMINATION – AGAINST
## DEFENDANTS ASIA CO AND AAA

109.   Kim repeats and incorporates by reference each and every paragraph of this Complaint as though fully set forth herein verbatim.

**Answer:** Sin incorporates by reference its answers to Paragraphs 1 through 108 of Plaintiff's Complaint as though fully set forth herein.

110.   At all relevant times, Defendants Asia Co and AAA were an "employer" and a "person" as those terms are defined by Title VII.

**Answer:** Denied.

111.   At all times relevant herein, under Title VII, Kim had a right to employment free from discrimination based on her sex.

**Answer:** Sin acknowledges Plaintiff's statement of the law, but denies as untrue any allegation or inference that he is a covered employer under Title VII.

112.   Defendants Asia Co and AAA violated Kim's rights under Title VII by, discriminating against Kim because of her sex, including but not limited to:

 a.   Terminating Kim's employment because of her sex;

 b.   Denying Kim employment opportunities because of her sex;

 c.   Treating employees, including Kim, differently than similarly situated male employees;

d.      Discriminating against Kim with respect to compensation or the terms, conditions, or privileges of employment; and

e.      Otherwise discriminating against and disparately treating Kim on the basis of her sex with respect to the terms, conditions and privileges of her employment.

**Answer:** a.-e. Denied.

113.   As a direct and proximate result of Defendant Asia Co. and AAA's aforementioned intentional violation of Kim's civil rights, as set forth by Title VII, Kim has and will continue to suffer damages, including but not limited to: the loss of employment; the loss of income, fringe benefits, and bonuses, both past and future; humiliation, shock, mental, emotional and physical distress; and damage to her personal and professional reputation.

**Answer:** Denied.

WHEREFORE, Sin denies that Plaintiff is entitled to any of the relief she requests, and Sin requests that judgment be entered for a no cause of action with costs and attorney's fees to Sin.

## COUNT II – VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT – SEX DISCRIMINATION – AGAINST ALL DEFENDANTS

114.   Kim repeats and incorporates by reference each and every paragraph of this Complaint as though fully set forth herein verbatim.

26

**Answer:** Sin incorporates by reference its answers to Paragraphs 1 through 113 of Plaintiff's Complaint as though fully set forth herein.

115.   At all times relevant herein, Kim was an employee and Asia Co., AAA, and Sin (collectively "Defendants") each were an "employer" within the meaning of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), MCL 37.2101 *et seq*.

**Answer:** Sin acknowledges Plaintiff's statement of the law, but denies any allegation or inference that he has violated the law.

116.   At all times relevant herein, under the ELCRA, Kim had a right to employment free from discrimination based on her sex.

**Answer:**  Sin acknowledges Plaintiff's statement of the law, but denies any allegation or inference that he has violated the law.

117.   Defendants violated Kim's rights under the ELCRA by, discriminating against Plaintiff because of her sex, including but not limited to:

    a.   Terminating Kim's employment because of her sex;

    b.   Denying Kim employment opportunities because of her sex;

    c.   Treating employees, including Kim, differently than similarly situated male employees;

    d.   Discriminating against Kim with respect to compensation or the terms, conditions, or privileges of employment; and

e.      Otherwise discriminating against and disparately treating Kim on the basis of her sex with respect to the terms, conditions and privileges of her employment.

**Answer:** a.-e. Denied.

118.   As a direct and proximate result of Defendants' aforementioned intentional violations of Kim's civil rights, as set forth by the ELCRA, Plaintiff Mijin Kim has and will continue to suffer damages, including but not limited to: the loss of employment; the loss of income, fringe benefits, and bonuses, both past and future; humiliation, shock, mental, emotional and physical distress; and damage to her personal and professional reputation.

**Answer:** Denied.

WHEREFORE, Sin denies that Plaintiff is entitled to any of the relief she requests, and Sin requests that judgment be entered for a no cause of action with costs and attorney's fees to Sin.

## COUNT III – VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 – RETALIATION – AGAINST DEFENDANTS ASIA CO. AND AAA

119.   Kim repeats and incorporates by reference each and every paragraph of this Complaint as though fully set forth herein verbatim.

**Answer:** Sin incorporates by reference its answers to Paragraphs 1 through 118 of Plaintiff's Complaint as though fully set forth herein.

28

120.   At all relevant times, Defendants Asia Co. and AAA were an "employer" and a "person" as those terms are defined by Title VII.

**Answer:** Denied.

121.   Under Title VII, Defendants Asia Co. and AAA were prohibited from:

a.       Retaliating or otherwise discriminating against Kim because she made or filed a complaint about sexual harassment and discrimination which violated Title VII; and

b.       Retaliating or otherwise discriminating against Kim because she expressed her opposition to sexual harassment and discrimination which violated Title VII.

**Answer:** Denied.

122.   Defendants Asia Co. and AAA violated the aforementioned prohibitions imposed by Title VII by terminating Kim's employment and otherwise retaliating against her because she made or filed a complaint and/or expressed her opposition to illegal sex harassment and/or discrimination by Defendants.

**Answer:** Denied.

123.   As a direct and proximate result of Defendants Asia Co. and AAA's aforementioned intentional violation of Kim's civil rights, as set forth by Title VII, Kim has and will continue to suffer damages, including but not limited to: the loss

of compensation, both past and future; humiliation, shock, mental, emotional and physical distress; and damage to her personal and professional reputation.

**Answer:** Denied.

WHEREFORE, Sin denies that Plaintiff is entitled to any of the relief she requests, and Sin requests that judgment be entered for a no cause of action with costs and attorney's fees to Sin.

### COUNT IV – VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT – RETALIATION – AGAINST ALL DEFENDANTS

124.   Kim repeats and incorporates by reference each and every paragraph of this Complaint as though fully set forth herein verbatim.

**Answer:** Sin incorporates by reference its answers to Paragraphs 1 through 123 of Plaintiff's Complaint as though fully set forth herein.

125.   At all times relevant herein, Kim was an employee and Defendants each were an "employer" and "person" within the meaning of the ELCRA.

**Answer:** Sin acknowledges Plaintiff's statement of the law, but denies any allegation or inference that he has violated the law.

126.   At all times relevant herein, under the ELCRA, Kim had a right to be free from retaliation and discrimination because she opposed a violation of the ELCRA.

**Answer:** Sin acknowledges Plaintiff's statement of the law, but denies any allegation or inference that he has violated the law.

127.    Defendants violated Kim's rights under the ELCRA by, retaliating and discriminating against Kim because of her report of a violation of the ELCRA including but not limited to:

       a.    Terminating Kim's employment because she reported a violation of the ELCRA;

       b.    Denying Kim employment opportunities because she reported a violation of the ELCRA;

       c.    Treating employees, including Kim, differently than similarly situated employees;

       d.    Discriminating against Kim with respect to compensation or the terms, conditions, or privileges of employment; and

       e.    Otherwise discriminating against and disparately treating Kim because she reported a violation of the ELCRA with respect to the terms, conditions and privileges of her employment.

**Answer:** a.-e. Denied.

128.   As a direct and proximate result of Defendants' aforementioned intentional violations of Kim's civil rights, as set forth by the ELCRA, Kim has and will continue to suffer damages, including but not limited to: the loss of employment; the loss of income, fringe benefits, and bonuses, both past and future; humiliation,

shock, mental, emotional and physical distress; and damage to her personal and professional reputation.

**Answer:** Denied.

WHEREFORE, Sin denies that Plaintiff is entitled to any of the relief she requests, and Sin requests that judgment be entered for a no cause of action with costs and attorney's fees to Sin.

## COUNT V – VIOLATION OF TITLE VII OF THE
## CIVIL RIGHTS ACT OF 1964 – SEX HARASSMENT – AGAINST
## DEFENDANTS ASIA CO. AND AAA

129.   Kim repeats and incorporates by reference each and every paragraph of this Complaint as though fully set forth herein verbatim.

**Answer:** Sin incorporates by reference its answers to Paragraphs 1 through 128 of Plaintiff's Complaint as though fully set forth herein.

130.   At all relevant times, Defendants Asia Co. and AAA were an "employer" and a "person" as those terms are defined by Title VII.

**Answer:** Denied.

131.   Under Title VII, Defendants Asia Co. and AAA were prohibited from harassing Kim on the basis of her sex.

**Answer:** Sin acknowledges Plaintiff's statement of the law, but denies as untrue any allegation or inference that he or Asia Co. are covered by Title VII.

132.   Defendants Asia Co. and AAA violated Kim's rights under Title VII by harassing Kim because of her sex and/or permitting Sin, a management employee and Kim's direct supervisor, to harass Kim on the basis of her sex.

**Answer:** Denied.

133.   Sin's sexual harassment of Kim was intentional.

**Answer:** Denied.

134.   Sin's sexual harassment of Kim created a hostile work environment.

**Answer:** Denied.

135.   Defendants Asia Co. and AAA failed to adequately investigate Kim's complaint against Defendant Sin.

**Answer:** Denied.

136.   Defendants Asia Co. and AAA failed to take appropriate remedial action against Sin on the basis of Kim's complaint.

**Answer:** Denied.

137.   Defendants Asia Co. and AAA used Kim's submission to or rejection of such sexual harassment as a factor in decision(s) affecting Kim's employment.

**Answer:** Denied.

138.   As a direct and proximate result of Defendant Asia Co. and AAA's aforementioned intentional violations of Kim's civil rights, as set forth by Title VII, Kim has and will continue to suffer damages, including but not limited to: the loss

of employment; the loss of income, fringe benefits, and bonuses, both past and future; humiliation, shock, mental, emotional and physical distress; and damage to her personal and professional reputation.

**Answer:** Denied.

WHEREFORE, Sin denies that Plaintiff is entitled to any of the relief she requests, and Sin requests that judgment be entered for a no cause of action with costs and attorney's fees to Sin.

## COUNT VI – VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT – SEX HARASSMENT – AGAINST ALL DEFENDANTS

139.   Kim repeats and incorporates by reference each and every paragraph of this Complaint as though fully set forth herein verbatim.

**Answer:** Sin incorporates by reference its answers to Paragraphs 1 through 138 of Plaintiff's Complaint as though fully set forth herein.

140.   At all times relevant herein, Kim was an employee and Defendants each were an "employer" and "person" within the meaning of the ELCRA.

**Answer:** Sin acknowledges Plaintiff's statement of the law, but denies any allegation or inference that he has violated the law.

141.   At all times relevant herein, under the ELCRA, Kim had a right to be free from harassment because of her sex.

**Answer:** Sin acknowledges Plaintiff's statement of the law, but denies any allegation or inference that he has violated the law.

34

142.   Defendants violated Kim's rights under the ELCRA by harassing Kim because of her sex and/or permitting Sin, a management employee and Kim's direct supervisor, to harass Kim on the basis of her sex.

**Answer:** Denied.

143.   Sin's sexual harassment of Kim was intentional.

**Answer:** Denied.

144.   Sin's sexual harassment of Kim created a hostile work environment.

**Answer:** Denied.

145.   Defendants failed to adequately investigate Kim's complaint against Defendant Sin.

**Answer:** Denied.

146.   Defendants failed to take appropriate remedial action against Sin on the basis of Kim's complaint.

**Answer:** Denied.

147.   As a direct and proximate result of Defendants' aforementioned intentional violation of Plaintiff Mijin Kim's civil rights, as set forth by the ELCRA, Kim has and will continue to suffer damages, including but not limited to: the loss of employment; the loss of income, fringe benefits, and bonuses, both past and future; humiliation, shock, mental, emotional and physical distress; and damage to her personal and professional reputation.

**Answer:** Denied.

WHEREFORE, Sin denies that Plaintiff is entitled to any of the relief she requests, and Sin requests that judgment be entered for a no cause of action with costs and attorney's fees to Sin.

## COUNT VII – ASSAULT AND BATTERY – AGAINST DEFENDANT SIN ONLY

148.   Kim repeats and incorporates by reference each and every paragraph of this Complaint as though fully set forth herein verbatim.

**Answer:** Sin incorporates by reference its answers to Paragraphs 1 through 147 of Plaintiff's Complaint as though fully set forth herein.

149.   Sin committed acts which caused Kim to be apprehensive that Sin would subject her to an imminent battery and/or intentional invasion of her rights to be free from offensive and harmful contact.

**Answer:** Denied.

150.   Sin engaged in conduct that demonstrated that Sin had a present ability to subject Kim to an immediate, intentional, offensive, and harmful touching.

**Answer:** Denied.

151.   Sin did in fact engage in a touching of Kim that was an immediate, intentional, offensive, and harmful touching.

**Answer:** Denied.

152.   Kim did not consent to such conduct, which caused injury, damage, loss, and/or harm to her.

**Answer:** Denied.

153.   The acts described herein constitute assault and battery, actionable under the laws of the State of Michigan.

**Answer:** Denied.

154.   Sin committed acts which resulted in harmful or offensive contact with Kim's body.

**Answer:** Denied.

155.   As a direct and proximate result of Sin's aforementioned intentional assault and/or battery against Kim, Kim has and will continue to suffer damages, including but not limited to:  the loss of employment; the loss of income, fringe benefits, and bonuses, both past and future; humiliation, shock, mental, emotional and physical distress; and damage to her personal and professional reputation.

**Answer:** Denied.

WHEREFORE, Sin denies that Plaintiff is entitled to any of the relief she requests, and Sin requests that judgment be entered for a no cause of action with costs and attorney's fees to Sin.

## <u>AFFIRMATIVE DEFENSES</u>

In addition to the foregoing responses to the particular allegations of the Complaint, and without conceding that it bears the burden of proof as to any issue, Sin asserts the following further defenses to Plaintiff's Complaint:

1.     Some of Plaintiff's claims are barred due to Plaintiff's failure to mitigate her alleged damages.

2.     Plaintiff's damages are limited under the after-acquired evidence doctrine.

3.     Plaintiff's assault and battery claim is barred as she consented to the allegedly offensive touch.

4.     Some or all of Plaintiff's complaints are barred by the applicable statute of limitations.

Sin reserves the right to assert and does not waive any additional or further defenses as may be revealed during discovery or otherwise and reserves the right to amend this Answer to assert any such defenses.

Respectfully submitted,

KIENBAUM HARDY
VIVIANO PELTON & FORREST, P.L.C.

By: */s/ Eric J. Pelton*
    Eric J. Pelton (P40635)
    Lauren Walas (P87669)
Attorneys for Defendant Seng Ja Sin
280 N. Old Woodward Ave., Ste. 400
Birmingham, MI 48009
(248) 645-0000
epelton@khvpf.com
Dated:  April 7, 2025            lwalas@khvpf.com
563014_3

39

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 7, 2025, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to upon all ECF participants.

<div style="margin-left: 50%;">

*/s/ Eric J. Pelton*
Eric J. Pelton (P40635)
Kienbaum Hardy
Viviano Pelton & Forrest, P.L.C.
280 N. Old Woodward Ave., Ste. 400
Birmingham, MI 48009
(248) 645-0000
epelton@khvpf.com

</div>

563014_3